1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   HUMBOLDT BAYKEEPER, et al.,                    No. C 06-04188 CRB

12              Plaintiffs,                          **ORDER**

13      v.

14   SIMPSON TIMBER COMPANY, et al.,

15              Defendants.

16   _____/

17        The Ecological Rights Foundation, Humboldt Baykeeper, and Californians for

18   Alternatives to Toxics (collectively, "Plaintiffs") brought this lawsuit against numerous

19   entities who, they allege, are responsible for polluting Humboldt Bay.  Now pending before

20   the Court are two motions to dismiss.  For the reasons set forth below, the Court hereby

21   DENIES the both motions.

22                                    **BACKGROUND**

23        Plaintiffs' complaint focuses on two adjacent parcels of property in Humboldt County

24   that formerly were used in the manufacture of timber and plywood ("the Site").  See Compl.

25   ¶¶ 36-43.  According to the complaint, numerous companies have run timber-related

26   businesses on the Site, beginning as early as 1863 and continuing at least until 1984.  See id.

27   ¶¶ 30-34.  The complaint alleges that in 1991 Defendant Preston Properties acquired the Site,

28   id. ¶ 35, and it identifies Patrick O'Dell as the President of Preston Properties, id. ¶ 20.  The

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  complaint further alleges that the Site is currently used for several purposes, including "as a

2  flea market, storage facility, and a building materials distribution center."  Id. ¶ 56.

3       Plaintiffs claim that industrial activity has contaminated the Site.  See generally id. ¶¶

4  63-82.  Principally, Plaintiffs allege that the contamination is due to the use of a fungicide

5  and wood preservative known as "Woodlife" by the Simpson Timber Company, which

6  owned the Site between 1956 and 1984--a timeframe that includes a period when the Site

7  was owned by a corporate entity that eventually merged with Simpson Timber Company in

8  1963.  Id. ¶¶ 33-34, 38-43.  The complaint states that Woodlife is a "solution of

9  pentacholophenol dissolved in mineral spirits."  Id. ¶ 41.  It alleges that Woodlife itself is "a

10  known carcinogen, but, more importantly, [contains] much more toxic dioxins and furans."

11  Id.  According to Plaintiffs, these toxins accumulate in organisms to which they are exposed

12  and, even at very low levels of exposure, pose a danger to human health and safety.  See id.

13  ¶¶ 76-79 (alleging that these toxins cause "cancer and reproductive harm, and

14  immunological, cognitive, and physical defects in children").

15       But Plaintiffs do not limit their allegations of environmental wrongdoing to the

16  bygone timber-related activities of the Simpson Timber Company.  In addition, they assert

17  that "[t]he sources of pollutants and hazardous waste contaminants at the Site include, but are

18  not limited to, plywood manufacturing activities and ongoing activities relating to the

19  storage, maintenance, and dismantling of vehicles, equipment, and other materials."  Id. ¶ 65

20  (emphasis added).  They further allege that the various defendants, including Preston

21  Properties and Patrick O'Dell, have been involved in bungled clean-up activities at the Site.

22  See generally id. ¶¶ 44-55.  For instance, Plaintiffs assert that the defendants excavated

23  contaminated soils from the Site, and from properties adjacent to the Site, and then disposed

24  of the soil in a facility that was not approved to accept contaminated waste.  Id. ¶¶ 52-53.

25  The also assert that these defendants failed to comply with applicable environmental

26  regulations in their clean-up and disposal efforts.  See id. ¶¶ 197-235.

27       Finally, Plaintiffs assert that the various defendants have left the Site in a condition

28  that currently results in "the perpetual discharge of pollutants" into Humboldt Bay.  Id. ¶ 55.

2

United States District Court

For the Northern District of California

1    Their complaint alleges that pollutants at the Site flow from some areas directly into the Bay,

2    see id. ¶ 29, and from other areas indirectly into the Bay via a wetland channel owned by the

3    North Coast Railroad Authority, see id. ¶¶ 25, 27.

**DISCUSSION**

5        Now pending before the Court are two motions to dismiss.  The first, filed by

6    Defendant Preston Properties, contests the sufficiency of the entire complaint.  The second,

7    filed by Defendant Patrick O'Dell, contests only the sufficiency of the complaint's

8    allegations as to him personally.

**I.  Preston Properties' Motion**

10       Defendant Preston Properties contends that the entire case should be dismissed,

11   pursuant to Rule 12(b)(7), due to Plaintiff's failure to join the North Coast Railroad

12   Authority as a necessary or indispensible party.  Preston Properties advances two arguments

13   to support this contention, neither of which is persuasive.

14       First, Preston Properties argues that Plaintiff has "fail[ed] to name the actual owner of

15   the property where the alleged penta and dioxins are situate[d] in the ground."  Def. Preston

16   Properties Mot. to Dismiss at 5.  This argument makes it seem as though Plaintiffs have

17   named the wrong wrongdoer.  Even a cursory glance at the complaint, however, dispels that

18   notion.  Plaintiffs' theory is not that liability rests wherever the toxins are or may have

19   wandered.  Their theory is that the named defendants are responsible for contaminating the

20   Site, for engaging in clean-up and other activities on the Site that have aggravated the

21   problem of contamination, and for violating numerous environmental laws and regulations in

22   the process.  The North Coast Railroad Authority is entangled in the case, according to

23   Plaintiffs, only because the pollution caused by the defendants washes or flows off the Site,

24   across a wetland channel owned by that entity, and into Humboldt Bay.  Simply because

25   toxic contamination may flow off the Site and onto someone else's property, however, does

26   not make that third party "necessary and indispensible" under Rule 19.

27       Second, Preston Properties argues that Plaintiffs seek relief that cannot be provided

28   without adding the North Coast Railroad Authority as a party.  For example, Preston

**United States District Court**
For the Northern District of California

1  Properties observes that Plaintiff want this Court to "[e]njoin Defendants . . . to characterize,

2  perform a human health and ecological risk assessment, and to remediate all contamination

3  of the Humboldt Bay, the Eureka Marsh, the adjacent wetland channel, the Site, and the

4  ground water beneath the Site."  Compl. ¶ 236(K).  Because the defendants have no control

5  over some of these lands--specifically, the wetland channel owned by the North Coast

6  Railroad Authority--Preston Properties argues that Plaintiff has failed to include all necessary

7  parties in the suit.

8      The problem with this argument is that it does not establish the North Coast Railroad

9  Authority as a necessary or indispensable party, at least insofar as Rule 19 is concerned.  It

10  merely suggests that Plaintiffs may not be able to obtain some of the relief they seek.  The

11  fact that some forms of relief may be unavailable, however, does not mean that "complete

12  relief cannot be accorded among those already parties."  Fed. R. Civ. P. 19(a).  To the

13  contrary, the Court finds that it would be able to fashion "meaningful" or "complete" relief

14  between the parties currently involved in this lawsuit, even without the presence of the North

15  Coast Railroad Authority.  See United States ex rel. Morongo Band of Mission Indians v.

16  Rose, 34 F.3d 901, 908 (9th Cir. 1994) ("The [plaintiff] may have sought relief beyond any

17  within the power of the federal courts to grant.  But such overreaching in the pleadings cannot

18  mean that every [other relevant actor] . . . who might associate himself with [defendant] in

19  the future is a necessary party."); see also Northrop Corp. v. McDonnell Douglas Corp., 705

20  F.2d 1030, 1043 (9th Cir.), cert. denied, 464 U.S. 849 (1983); Stumpf v. Fidelity Gas Co.,

21  294 F.2d 886, 890-91 (9th Cir. 1961).

22      The Court makes no determination today about whether it would have authority to

23  provide Plaintiffs with any relief involving property owned by the North Coast Railroad

24  Authority--or, for that matter, property belonging to any other entity that is not currently a

25  party to the suit.  Cf. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102,

26  110 (1968) ("Of course, since the outsider is not before the court, he cannot be bound by the

27  judgment rendered. This means, however, only that a judgment is not res judicata as to, or

28  legally enforceable against, a nonparty.").  Nor does the Court now make any determination

4

about the legal effect of a document that has been tendered to the Court in which the North Coast Railroad Authority purports to "submit to this Court's jurisdiction" for purposes of any relief that the Court may order in the case.  The only question currently pending before the Court is whether the case must be dismissed because Plaintiff has failed to add the North Coast Railroad Authority as a necessary or indispensable party.  The Court holds that dismissal is not required, and nothing more.  To the extent that Plaintiffs have suggested in their filings that the Court simply join the North Coast Railroad Authority as a party, the Court finds that such joinder is unnecessary and inappropriate as a response to the motion to dismiss.  If Plaintiffs wish to add the North Coast Railroad Authority as a party themselves, either as a plaintiff or a defendant, they must do so by amending their complaint.

### II.  O'Dell's Motion

Defendant Patrick O'Dell does not challenge the sufficiency of the entire complaint.  Instead, he contends only that he must be dismissed as a defendant.  He argues that Plaintiffs have made no specific allegations of wrongdoing against him as an individual, nor any allegations that would support an attempt to pierce the corporate veil of Preston Properties, the company he runs.

O'Dell's motion assumes that some allegation of independent, individual conduct is necessary for Plaintiffs to sustain a cause of action against O'Dell.  Contrary to O'Dell's theory, however, the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") both permit the imposition of penalties, even criminal penalties, against individuals merely because they are are in positions of authority at polluting companies.  See 33 U.S.C. §§ 1319(c)(2), (6) (imposing liability on "any person who . . . knowingly violates the CWA, including "any responsible corporate officer"); 42 U.S.C. § 6792(a)(1)(A) (imposing liability on "any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective" pursuant to the RCRA).

Indeed, courts consistently have held that individuals whose acts or omissions have led to such pollution may be held responsible individually, notwithstanding the fact that they

may have been acting in their capacity as an employee or officer of a company or entity that owns the property in question or conducts business on it.  See, e.g., United States v. Iverson, 162 F.3d 1015, 1022-26 (9th Cir. 1998) (holding that a former officer and current "consultant" of a company could be held liable as a "responsible corporate officer" for pollution that resulted from the dumping of hazardous wastewater); Zands v. Nelson, 779 F. Supp. 1254, 1264-65 (S.D. Cal. 1991) (holding that numerous individuals could be held liable as alleged "contributors" to pollution caused by leaks in underground gas containers, including "individuals who operated the pumps during which time the gas allegedly leaked, and individuals responsible for the installation of the piping and pumps for the gasoline tanks that allegedly leaked").

Next, O'Dell argues that he has had no actual involvement with any actvity on the Site that may have caused its contamination.  O'Dell thus suggests that this Court should convert his motion to dismiss into a so-called "speaking motion" for summary judgment, pursuant to Rule 56(f), and that the Court should rely upon his affidavit, in which he asserts that he has never had any involvement as an individual in any activity that might have caused the alleged contamination of the Site.  O'Dell's contentions are in direct conflict with the allegeations set forth in the complaint and therefore cannot be sustained.  The Complaint clearly alleges that O'Dell is the leader of a corporate entity that is subject to certain requirements under federal environmental laws and that the company has failed to meet those requirements.  It also alleges that O'Dell himself has been involved in clean-up activities that have exacerbated the deleterious effect of contamination at the Site on the surrounding environment.  To the extent that O'Dell is simply challenging the allegations set forth in the complaint, a motion to dismiss is not the proper tool to mount such a challenge.

At oral argument, O'Dell raised one final argument regarding the sufficiency of the claims against him.  He suggested that the complaint is defective because it fails to allege that he knowingly or intentionally violated applicable environmental laws.  See Iverson, 162 F.3d at 1022 ("The CWA holds criminally liable 'any person who . . . knowingly violates its provisions." (quoting 33 U.S.C. §§ 1319(c)(2)) (emphasis added).  Contrary to O'Dell's

6

United States District Court

For the Northern District of California

argument, however, the complaint <u>does</u> make adequate allegations regarding his mental state. For example, the complaint alleges that O'Dell was involved in the "limited investigations of soil, groundwater, and surface water contamination at the Site."  Compl. ¶ 45.  The complaint further alleges that regional environmental authorities conducted extensive tests on the Site and issued an abatement order requiring certain remedials steps to be taken there--all while the Site was owned by Preston Properties and O'Dell was its President.  <u>Id.</u> ¶¶ 46-47.  The complaint also specifically alleges that O'Dell himself has been involved in various clean-up activities at the Site, including the removal of "the Woodlife distribution pipeline" and the excavation and disposal of contaminated soil.  <u>Id.</u> ¶¶ 51-53.  Finally, the complaint alleges that O'Dell and his company currently use the Site in a manner that "exposes large numbers of people to the chemicals that are, and have been in the past, used on the Site" and leads to the run-off of various toxic chemicals.  <u>Id.</u> ¶¶ 56-62.

The Court finds that these allegations are "sufficient to warrant a finding by the trier of the facts that the defendant had, by reasons of his position in the corporation, responsibility and authority either to prevent in the first instance or promptly to correct, the violation complained of, and that he failed to do so."  <u>Iverson</u>, 162 F.3d at 1024 (quoting <u>United States v. Park</u>, 421 U.S. 658, 673-74 (1975)).  Indeed, if proven, these facts would readily support a jury's inference that O'Dell acted at relevant times with the requisite state of mind.  Although the complaint does not employ the magic words "knowingly" or "intentional," such magic words are unnecessary.  It is enough for pleading purposes that the complaint set forth facts from which a reasonable jury could find that O'Dell acted with knowledge.  While there are numerous cases that stand for the proposition that a plaintiff's case cannot rest merely on "purely conclusory allegations . . . with no concrete, relevant particulars" concerning a defendant's intent, <u>Forsberg v. Pac. Nw. Bell Tel. Co.</u>, 840 F.2d 1409, 1419 (9th Cir. 1988), this Court is aware of no case, and O'Dell point to none, that stands for the converse proposition that a plaintiff's complaint must contain a conclusory allegation of knowledge, even though it alleges specific facts that, if proven, would be more than sufficient to support a finding that the defendant acted with the requisite state of mind.

Indeed, even in the <u>criminal</u> context, and in other contexts where there are heightened
pleading requirements, the Ninth Circuit has not erected such a stringent requirement that the
plaintiff invoke a specific allegation of intent, at least where, as here, the complaint clearly
puts the defendant on notice that he is alleged to have committed acts that suggest he
possessed the requisite mental state.  See <u>United States v. Davis</u>, 336 F.3d 920 (9th Cir.
2003) (holding that there was no error where "the indictment [did] not contain a specific
verbal elaboration of criminal intent" because "the requisite intent [was] unambiguously
found in the words of the indictment"); <u>In re Read-Rite Corp.</u>, 335 F.3d 843,846 (9th Cir.
2003) (noting that a plaintiff satisfies the heightened pleading requirements under the Private
Securities Litigation Reform Act by alleging specific facts through which a reasonable jury
could infer that a defendant acted with the requisite scienter).  If the government can satisfy
the notice requirements in a criminal case, and if shareholders can satisfy the heightened
pleading requirements of the PSLRA, by setting forth specific allegations that, if proven,
would give rise to a strong inference that the defendant acted with the requisite state of mind,
the Court is satisfied that Plaintiffs have satisfied the much less rigorous notice pleading
requirements of Rule 8 in this case.  In short, the Court concludes that O'Dell has put forth
no reason why the complaint against him is insufficient.

<b>CONCLUSION</b>

Because the North Coast Railroad Authority is not a necessary or indispensable party
under Rule 19, the motion to dismiss filed by Defendant Preston Properties is hereby
DENIED.  Because the complaint alleges facts sufficient to hold Defendant Patrick O'Dell
liable as a "responsible corporate officer" under applicable environmental laws and sets forth
specific facts from which a reasonable jury could conclude that he acted knowingly, his
motion to dismiss is also DENIED.  If Plaintiffs wish to add the North Coast Railroad
Authority as a party to this case, they may file an amended complaint not later than Friday,
December 22, 2006.

**IT IS SO ORDERED.**

1

2  Dated:  December 8, 2006                         CHARLES  R. BREYER
                                                    UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California