# CONSENT DECREE

WHEREAS, Humboldt Baykeeper, Ecological Rights Foundation, and Californians for Alternatives to Toxics (collectively, "the Citizens") are non-profit public benefit corporations dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of Humboldt Bay and other area waters;

WHEREAS, Simpson Timber Company ("Simpson") is a corporation organized under the laws of the State of Washington with its corporate headquarters located in Tacoma, Washington;

WHEREAS, the Citizens filed a complaint ("Complaint") against Simpson in the United States District Court, Northern District Court of California on July 6, 2006, Civil Case No. C 06-04188 CRB (the "Action");

WHEREAS, the Citizens contend in their Complaint (as amended) that Simpson's past or present handling, storage, treatment, transportation, and/or disposal of solid and/or hazardous waste at property formerly owned by Simpson and located at 1200 West Del Norte Street, Eureka, California (hereinafter "the Facility"), may present an imminent and substantial endangerment to health or the environment, as set forth in section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972 (a)(1)(B);

WHEREAS, the Citizens further contend in their Complaint (as amended) that Simpson generated hazardous waste at or near the Facility and failed to obtain an Environmental Protection Agency Identification Number in violation of  22 C.C.R. § 66262.12 and 40 C.F.R. § 262.12, and has not and is not adequately testing its solid waste generated at or near the Facility for hazardous constituents in violation of 22 C.C.R. § 66262.11, 42 U.S.C. § 6922(a), and 40 C.F.R. § 262.11, and that such acts or omissions constitute actionable violations of RCRA;

WHEREAS, the Citizens further alleged in their Complaint (as amended) that Simpson has not and is not adequately testing its hazardous waste generated at the Facility to determine appropriate disposal methods of this waste in violation of 22 C.C.R. § 66268.7(a) and 40 C.F.R. § 268.7(a); has not produced and delivered to the disposal facility used to dispose of its wastes a

1

complete and accurate notice as required by 40 C.F.R. §§ 268.7(a)(2), (3) and 22 C.C.R. §§ 66268.7(a)(2), (3); did not maintain documentation as required by 40 C.F.R. §§ 268.7(6), (8) and 22 C.C.R. §§ 66268.7(6), (8); did not adequately test the soils that were excavated from the site to determine whether they met the treatment standards found at 40 C.F.R. § 268.40; did not provide certification to the facility receiving the wastes that the waste did or did not exhibit a characteristic of hazardous waste as required by 40 C.F.R. §§ 268.7(a)(2), (3) and 22 C.C.R. §§ 66268.7(a)(2), (3); did not prepare adequate manifests as required by 40 C.F.R. § 268.7(a)(2); diluted the excavated wastes in violation of 40 C.F.R. § 268.3(a); and disposed of hazardous wastes in violation of land disposal restrictions;

WHEREAS, the Citizens further alleged in their Complaint (as amended) that Simpson owned or operated a facility for the treatment, storage or disposal of solid and/or hazardous waste without applying for interim status as required by 42 U.S.C. § 6925(e) and Cal. Health & Safety Code § 25200.5, without filing notification with the Environmental Protection Agency as required by 42 U.S.C.§ 6930(a), and did not satisfy the general requirements for treatment, storage and disposal facilities as required by 40 C.F.R. §§ 264.10-264.151 and 22 C.C.R. §§ 66264.10-66264.151;

WHEREAS, Simpson denies each and every allegation of the Complaint as originally filed and as amended;

WHEREAS, the Citizens contend that the subsurface at the Facility and in adjoining areas is contaminated with dioxins and other contaminants caused by Simpson's prior operations at the Facility and that this contamination poses an imminent and substantial endangerment to the health of persons and the environment;

WHEREAS, Simpson contends that it has conducted significant investigations and remedial activities at the Facility and in the adjacent drainage swale located immediately to the east of the Facility (the "Eastern Drainage Swale") (collectively, the "Site"), under the oversight and with the approval of the California Regional Water Quality Control Board, North Coast Region ("Regional Water Board"), and that it has complied fully with all orders and directives issued by the Regional Water Board to date;

2

WHEREAS, Simpson denies that subsurface conditions at the Site pose an imminent or substantial endangerment to the health of persons or the environment;

WHEREAS, Simpson contends that the activities of subsequent owners and operators of the property and their tenants, as well as off-site sources, have contributed Contaminants of Concern to the Facility and to the Eastern Drainage Swale; and

WHEREAS, the Citizens and Simpson (the "Parties") agree that it is in their mutual interest to resolve this matter without further litigation;

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.  JURISDICTION AND VENUE

1.      For the purposes of this Consent Decree, the Parties stipulate that the United States District Court for the Northern District of California has jurisdiction over the Parties and subject matter of this Action.  The Parties stipulate that venue is appropriate in the Northern District of California.  The Parties further stipulate for purposes of this Consent Decree that the Complaint states a claim upon which relief may be granted against Simpson, and that the Citizens have standing to bring this action.

2.      The Court shall retain and have jurisdiction over the Parties to enforce the terms and conditions of this Consent Decree and to resolve disputes arising under this Consent Decree, as specifically set forth in Section XI hereof.

## II. GENERAL OBJECTIVES

3.      The objectives of this Consent Decree are:

a.  To implement a site monitoring program sufficient to verify that Contaminants of Concern are not migrating from the Site in concentrations that exceed applicable water quality objectives or standards;

b.  To remove dioxin-affected soils from the Eastern Drainage Swale, install a geocomposite liner and restore wetlands;

1   c.  To establish a mechanism for requiring further investigation or remediation of the Site

2   if it is determined that Contaminants of Concern are migrating from the Site in concentrations

3   that exceed applicable water quality objectives or standards;

4   d.  To reimburse the Citizen's for their attorneys fees and other costs of litigation; and

5   e.  To reach a settlement of the Citizens' claims, and to provide a mutually acceptable

6   framework for resolution of potential disputes that may arise over the course of the decree.

## III.  DEFINITIONS

8   4.      Unless otherwise expressly defined herein, terms used in this Consent Decree

9   which are defined in RCRA or the California Hazardous Waste Control Act or in regulations

10  promulgated under those statutes, have the meaning assigned to them in the statutes or

11  regulations.

12  5.      Whenever terms listed below are used in this Consent Decree, the following

13  definitions apply:

14  "A-Zone" means the shallow groundwater layer that underlies the Facility and adjacent

15  areas.

16  "B-Zone" means the deeper groundwater layer that underlies the Facility and adjacent

17  areas.  The "B-Zone" is separated from the "A-Zone" by an aquitard composed of "Bay Mud."

18  "Contaminants of Concern" means dioxins, pentachlorophenol, tetrachlorophenol,

19  benzene, toluene, ethylbenzene, total xylenes, the following specific polynuclear aromatic

20  hydrocarbons:  naphthalene, acenaphthylene, acenaphthene, fluorine, phenanthrene, anthracene,

21  fluoranthene and pyrene, total petroleum hydrocarbons as gasoline, total petroleum hydrocarbons

22  as diesel, total petroleum hydrocarbons as motor oil, total petroleum hydrocarbons as mineral

23  spirits, and formaldehyde.

24  "Consent Decree" and "decree" mean this Consent Decree and all exhibits hereto.

25  "Day" means a calendar day.  In computing any period of time under this Consent

26  Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the

27  period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal

28  or State Holiday.

"Dioxins" shall mean the total toxic equivalency ("TEQ") of congeners of polychlorinated dibenzodioxins and dibenzofurans, as adjusted by consideration of the then-current World Health Organization ("WHO") Toxic Equivalent Factors for these congeners, using 2,3,7,8-tetrachlorodibenzo-p-dioxin, as the baseline.

"Eastern Drainage Swale" means the drainage feature located immediately to the east of the Facility, as shown on Exhibit B attached to this Consent Decree.

"Facility" means the area within the property boundary of the approximately 17-acre property located at 1200 West Del Norte Street, Eureka, California, currently owned by Preston Properties and formerly operated by Simpson as a lumber mill and plywood assembly plant, as shown on Exhibit A attached to this Consent Decree.

"NAPL" means nonaqueous phase hydrocarbon liquids that exist as a separate, immiscible phase when in contact with water and/or air.

"Actionable NAPL" means NAPL that more likely than not originated from Simpson's activities on the Facility and that poses a risk of transporting dioxins, pentachlorophenol, or tetrachlorophenol or any other Contaminant of Concern from the Facility or from the Eastern Drainage Swale in concentrations that exceed applicable water quality objectives or other applicable legal standards.

"Site" means the area encompassed by the Facility and the Eastern Drainage Swale.

### IV.  SITE MONITORING PROGRAM

6.      Simpson shall implement the Site Monitoring Plan ("SMP") attached as Exhibit A hereto, in accordance with the schedule set forth below.  While the Citizens concur in the specific monitoring actions to be undertaken by Simpson, as described in the SMP, the incorporation of the SMP into the Consent Decree shall not be construed as endorsement by the Citizens of Simpson's site conceptual model or interpretation of historical site monitoring data or concurrence with any expert opinions or conclusions expressed in the SMP.

a.      By May 31, 2008, install seven of the eleven new monitoring well clusters to be completed in the A-Zone and B-Zone at the locations specified in Exhibit A to this Consent Decree, with the remaining three well clusters and

1     GMW-01B to be installed after completion of the Eastern Drainage Swale

2     remediation but in no event later than November 15, 2008 ;

3     b.   By May 31, 2008, inspect and evaluate the condition of the existing

4     monitoring wells known as GP-01A, GP-01B, GP-02A, GP-02B and GWM-

5     01A, as identified on Exhibit A to this Consent Decree.  If these wells are not

6     in satisfactory existing condition to serve as accurate groundwater detection

7     monitoring wells, Simpson shall repair or install replacement monitoring

8     wells at the approximate locations of these wells;

9     c.   Coincident with the installation of all new A-Zone monitoring wells, collect

10     continuous core samples of the unsaturated zone, as described in Exhibit A;

11     and

12     d.   By May 31, 2008, collect continuous core samples at the ten sampling points

13     identified on Figure 5 of Exhibit A, in accordance with the provisions of the

14     SMP.

15     7.    Simpson shall continuously inspect soils during the course of monitoring well

16 installation and drilling of soil borings as discussed in the Site Monitoring Plan.  Simpson shall

17 photo document and record in written logs the location and characteristics of all NAPL

18 contamination observed during such activities.  If Actionable NAPL is observed, Simpson shall

19 either contain such material or excavate and remove such material for off-site disposal.

20     **V.  EASTERN DRAINAGE SWALE AND NAPL REMEDIATION**

21     8.    Simpson shall perform the Eastern Drainage Swale Remedial Action Plan

22 ("RAP") attached as Exhibit B to this Consent Decree by October 15, 2008.

23     9.    If the excavation of soils in the section of the Eastern Drainage Swale that runs

24 200 feet northward from the culvert extends down to the top of the Bay Mud, confirmation

25 samples will be collected from the Bay Mud and analyzed for dioxins.  If dioxins above 190

26 parts per trillion TEQ are detected in the Bay Mud, within 48 hours of discovery of this

27 condition, Simpson and the Citizens shall meet and confer to determine what, if any, further

28 measures may be  required by applicable law.  Nothing in this Consent Decree shall prohibit

1    Simpson from excavating Bay Mud or require Simpson to excavate Bay Mud.  As specified in

2    Paragraph 21 hereof, either Party may invite Regional Water Board staff to participate in the

3    meet and confer.

4         10.    Simpson shall continuously inspect soils during the course of the Eastern

5    Drainage Swale remediation for the presence of NAPL.  Simpson shall photo document and

6    record in written logs the location and characteristics of all observed NAPL contamination of

7    soils.  If Actionable NAPL is observed in the western bank or sidewall of the Eastern Drainage

8    Swale (i.e., the bank or sidewall closest to the Facility boundary), Simpson shall further excavate

9    in that direction (up to but not under existing buildings on the Facility) to determine the extent

10   and source of the material.  Simpson shall contain or excavate and remove for off-site disposal,

11   all such Actionable NAPL other than that which is located under buildings.  The presence of

12   pipes, asphalt or other paving materials traversing or overlying an area containing Actionable

13   NAPL shall not be considered sufficient, by itself, to preclude excavation of the soil.  With

14   respect to any Actionable NAPL that is located under buildings, Simpson shall devise and

15   implement an effective containment strategy if necessary to prevent the migration of

16   Contaminants of Concern from the Facility in concentrations exceeding applicable water quality

17   objectives or standards.

18        11.    Simpson shall manage all soils excavated and disposed of pursuant to this

19   Consent Decree in accordance with all applicable requirements of federal, state and local law.

20   Nothing herein shall require excavated soils or other contaminated media to be classified or

21   managed as a hazardous waste unless required by law.

22                        **VI.  ADDITIONAL REMEDIAL RESPONSE**

23        12.    Based on the results of the Site Monitoring Plan, Simpson shall meet and confer

24   with the Citizens with respect to what, if any, further monitoring or remedial measures may be

25   necessary or appropriate at the Site.  The criteria specified in Paragraphs 13 and 14 of this

26   section shall govern whether Simpson is required to undertake any such measures.  Simpson or

27   the Citizens shall be entitled to invite Regional Water Board staff to participate in any and all

28   such meetings.

1        13.      Simpson shall perform additional investigation or monitoring beyond that

2    described in the Site Monitoring Plan attached as Exhibit A if the information collected pursuant

3    to the SMP or other investigations conducted at the Site indicates that Contaminants of Concern

4    are or are reasonably likely to be migrating or transported beyond the boundaries of the Site in

5    concentrations that exceed applicable water quality objectives or standards for groundwater or

6    surface water, as appropriate.

7        14.      Simpson shall perform remedial measures beyond those required in the Eastern

8    Drainage Swale RAP attached as Exhibit B if the site monitoring data indicates that

9    Contaminants of Concern are migrating or being transported beyond the boundaries of the Site in

10    concentrations that exceed applicable water quality objectives or standards for groundwater or

11    surface water, as appropriate.  Such remedial measures shall be sufficient to ensure that

12    Contaminants of Concern are prevented from migrating or being transported from the Site in

13    concentrations that exceed applicable water quality objectives or standards.  Simpson shall

14    conduct all remedial activities in accordance with applicable requirements of federal, state and

15    local law.

16        15.    If  additional remediation is determined to be necessary, Simpson shall analyze

17    the following options for site remediation and determine which of these options (or combination

18    of these options) is appropriate for protecting human health and the environment, taking

19    feasibility and cost concerns into account:  excavation and off-site disposal of contaminants, on-

20    site treatment of contaminants, or on-site containment of contaminants.  Simpson shall meet and

21    confer with the Citizens and with Regional Water Board staff with respect to any proposed

22    remediation measures.  Any such remediation measures shall be described in the Annual Report

23    described in Paragraph 20 hereof.

24        16.    Simpson shall not be required to undertake any remedial measures with respect to

25    NAPL that is not reasonably likely to have originated from Simpson's historical operations on

26    the Facility unless the NAPL is causing the migration of Contaminants of Concern that are

27    associated with Simpson's historical operations.  In such case, Simpson's obligation, if any, to

28    take remedial action with respect to such NAPL shall be determined by applicable law.

Notwithstanding the foregoing, if in the course of remediation work at the Facility or in the Eastern Drainage Swale Simpson identifies such NAPL, Simpson shall advise the Citizens and the Regional Water Board of the presence of the material and will provide any information it has regarding the material and the possible source or sources of the material.

## VII.  REPORTING AND CONSULTATION

17.    Simpson shall provide the Citizens with copies of all results of sample analysis and groundwater elevation logs performed or kept pursuant to this Consent Decree within ten business days after Simpson or any Simpson consultant receives these results.

18.    Simpson shall provide the Citizens with copies of any documents or correspondence that Simpson sends to any regulatory agency or authority concerning Simpson's investigation, monitoring, or remediation of contamination or pollutant discharge associated with the Facility or that originated at the Facility.

19.    The Citizens shall provide Simpson with copies of any documents or correspondence that the Citizens send to any regulatory agency or authority concerning the investigation, monitoring, or remediation of contamination or pollutant discharge associated with the Facility or that originated at the Facility.

20.    Simpson shall prepare an Annual Report for submittal to the Regional Water Board by May 31 of each year that this Consent Decree is in effect.  This Annual Report shall:

        a.    summarize the monitoring data collected pursuant to this Consent Decree during the prior year;

        b.    describe any additional monitoring wells, well points and soil borings (if any) beyond those set forth in Exhibit A that Simpson plans to install or perform or has installed or performed;

        c.    describe any additional remediation measures that were undertaken during the year or that are planned; and

        d.    provide the analysis referred to in Part VI above, if any.

21.    Simpson and the Citizens shall meet and confer on an as-needed basis for the purposes of keeping each other informed of the progress of activities undertaken pursuant to this

Consent Decree, to resolve technical issues that may arise from time to time, and to minimize the likelihood of disputes arising under this Consent Agreement.  At the request of either Simpson or the Citizens, the Regional Water Board staff may attend and participate fully in any such meetings and in any other meet and confer required under this Consent Decree.

## VIII.  SITE ACCESS FOR INVESTIGATION AND REMEDIATION

22.     The Citizens shall exercise their rights of access to the Facility pursuant to their separate settlement with Preston Properties, as set forth in Section IV of the Consent Decree between Plaintiffs and Preston Properties approved by the Court on January 11, 2008, in a manner that will allow Simpson access to the Facility for purposes of implementing the monitoring and remedial activities required by this Consent Decree.  Any action by Preston Properties which denies Simpson access to the Facility or Eastern Drainage Swale, or any action by the North Coast Railroad Authority which denies Simpson access to the Eastern Drainage Swale, shall be deemed a circumstance beyond Simpson's control for purposes of Paragraph 45 hereof.

23.     Simpson shall provide the Citizens with 15 days advance notice of any investigation or remedial actions taken by Simpson at the Site.  Simpson shall allow the Citizens to be present during any such investigation or remediation provided that the Citizens have permission from the applicable landowner to be present.

24.     The Citizens shall be entitled, upon request, to collect split samples of any samples taken by Simpson pursuant to this Consent Decree.  The Citizens may, at their sole expense and as they deem appropriate, analyze such split samples for contaminants.  All samples analyzed by the Citizens pursuant to this paragraph shall be delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect Contaminants of Concern at the analytical laboratory reporting limits specified in Exhibit A or other contaminants at appropriate detection limits.  The Citizens shall provide any and all such sampling results to Simpson within ten business days after receipt  of such sample results.

25.     Upon 15 days advance notice, and not more than four times per year, the Citizens shall be entitled to take their own samples from any monitoring well installed or maintained pursuant to this Consent Decree.  The Citizens shall only be allowed access to such monitoring wells as accompanied and supervised by a Simpson representative and shall reimburse Simpson, up to a maximum of $120 per hour for  costs incurred in providing such supervision, whether such representative is an employee of Simpson or a consultant retained by Simpson; provided, however, that the Citizens shall not be required to reimburse Simpson if the Citizens conduct their sampling on a day on which Simpson's consultant is present at the Site for other purposes. Simpson shall provide the Citizens with three days advance notice whenever Simpson or one of its representatives expects to be at the Site.  If the Citizens are unavailable to conduct their sampling on one of these days, and if a Simpson representative is unavailable on the date proposed by the Citizens for sampling, Simpson shall provide the Citizens with three alternative days within the next thirty days that a Simpson representative will be available for the sampling event.  The Citizens shall provide any and all such sampling results to Simpson within ten business days after receipt and validation of such sample results.

## IX.     ATTORNEYS'  FEES AND COSTS OF LITIGATION

26.     Within 30 days of the Effective Date, Simpson shall tender payment of $625,000 to the Citizens, which shall constitute payment in full for any liability that Simpson may have for the Citizens' attorneys fees and costs of suit.  Payment shall be by check made payable to Environmental Advocates Attorney-Client Trust Account, c/o Christopher Sproul, Environmental Advocates, 5135 Anza Street, San Francisco, CA 94121.  The Citizens may, at their election, devote some of this payment for locally beneficial environmental projects or to fund monitoring of Simpson's compliance with the Consent Decree.

## X. ENFORCEMENT OF DECREE AND DISPUTE RESOLUTION

27.     The Citizens shall not bring a Motion for Dispute Resolution to the Court, as provided for in Paragraph 29 hereof, until, at the earliest, two years and six months from the Effective Date.  Notwithstanding the foregoing, the Citizens shall at any time have the right to move the Court for enforcement of the following specific provisions of the Consent Decree:

a.    Implementation of the Site Monitoring Plan, attached as Exhibit A hereto;

b.    Implementation of the Eastern Drainage Swale  Remedial Action  Plan, attached as Exhibit B hereto;

c.    Section VII, pertaining to reporting and consultation;

d.    Section VIII, pertaining to the Citizens' right to collect split samples and to observe Simpson's monitoring and remediation activities at the site; and

e.    Section IX, pertaining to payment of attorneys fees and costs.

If any Party believes that a breach of the foregoing provisions of the Consent Decree has occurred, the Parties shall schedule a meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the issue.  If the Parties fail to schedule a meet and confer within seven days, or the meet and confer does not resolve the issue within seven days from the meet and confer, any Party shall be entitled to bring a motion before the United States District Court for the Northern District of California seeking enforcement of the Decree.  The Court shall retain jurisdiction over the Action for purposes of enforcing the above-referenced provisions of the Decree.

28.    By enumerating the sections of the Consent Decree listed in Paragraph 27 above, the Parties expressly intend that only those provisions of the Consent Decree that impose objective obligations on one party or the other may be enforced by the Court at any time during the term of the Consent Decree.  All obligations which are of a subjective nature, and which depend in whole or part on the interpretation of sampling or monitoring data, its significance, or whether such data reveals a violation of applicable legal standards, shall be subject exclusively to the Dispute Resolution provisions of Paragraph 29.

29.    If a dispute arises involving application of any of the provisions of this Consent Decree *other than* those identified in Paragraph 27, in the period commencing two years and six months from the Effective Date and running through the tenth year from the Effective Date, the Parties shall schedule a meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to discuss the issue and to develop a mutually

agreed upon plan, including implementation dates, to resolve the issue.  If the Parties fail to schedule a meet and confer within seven days, or the meet and confer does not resolve the issue within seven days from the meet and confer, any Party shall be entitled to bring a motion before the United States District Court for the Northern District of California, which shall retain jurisdiction for the limited purpose of resolving disputes concerning compliance with the terms of this Consent Decree.

30.     The Parties (including Simpson) shall be entitled to seek attorneys fees and costs incurred in any judicial Motion for Dispute Resolution proceeding pursuant to Paragraph 29. Such attorneys fees and costs may be awarded to the prevailing party in accordance with the provisions set forth in RCRA section 7002(d), 42 U.S.C. § 6974(d), except that for attorney work performed or other expense incurred in a Dispute Resolution proceeding during the period from two years and six months until five years from the Effective Date, any party's total recovery of attorneys fees and costs shall be capped at $175,000.  The recovery of any party's attorneys fees and costs for attorney work performed or other expense incurred in a Dispute Resolution proceeding during the period five years from the Effective Date until termination of the decree shall not be subject to this cap.  Where allowed, the Parties agree to initiate Dispute Resolution proceedings promptly upon determining the necessity therefore.

## XI.    DISMISSAL, WAIVER AND RELEASES

31.     All claims in the Citizens' First Amended Complaint against Simpson shall be deemed dismissed with prejudice as of the Effective Date.

32.     The Citizens Waiver and Release of Noticed Parties:  Upon the Effective Date, the Citizens, on their own behalf and on behalf of their officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors and assigns (collectively, "Citizen Parties"), covenant not to sue Simpson or its officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors and assigns (collectively, " Simpson Parties") during the Term of this Agreement with respect to any contamination located at or within or originating at or within the Facility or the Eastern Drainage Swale.  Further, Citizen Parties release Simpson Parties from and waive all claims against Simpson Parties, which arise from or

13

pertain to this Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this Action (except as provided in Paragraph 27, authorizing recovery of attorneys fees and costs to prevailing parties in motions to enforce the Consent Decree and in Paragraph 29, for Dispute Resolution).  Citizen Parties shall not request any further relief against Simpson Parties beyond that set forth in this Consent Decree for any of the claims set forth in the First Amended Complaint.

33.     Nothing in this Consent Decree shall be construed as limiting any rights the Citizens may otherwise have after termination of this Consent Decree to bring new claims against Simpson or other parties under RCRA section 7002 for alleged imminent and substantial endangerment to human health or the environment based upon facts then existing.

34.     Simpson's Waiver and Release of the Citizens:  Simpson, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors and assigns (collectively, "Simpson Parties"), release Citizen Parties from and waive all claims against Citizens Parties which arise from or pertain to this Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this Action (except as provided in Paragraph 27, authorizing recovery of attorneys fees and costs to prevailing parties in motions to enforce the Consent Decree and in Paragraph 29, for Dispute Resolution).

35.     No Admission:  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation and settling the claims asserted in the First Amended Complaint.  Nothing in this Consent Decree shall be construed as, and Simpson expressly does not intend to imply, any admission as to any fact, finding, conclusion, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Simpson of any fact, finding, conclusion, issue of law, or violation of law, or that Simpson has not complied fully with all orders and other directives of the Regional Water Board or that such compliance has not been adequate to address any risks presented by its historical activities

14

at the Facility.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## XII.    MISCELLANEOUS PROVISIONS

36.    Effective Date:  The Effective Date of this Consent Decree shall be the date upon which all Parties have signed this Consent Decree.

37.    Term of Consent Decree:  The Consent Decree shall continue in effect for a period of ten (10) years from the Effective Date (the "Term"), and it shall automatically terminate on that date.

38.    Execution in Counterparts:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

39.    Severability:  In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

40.    Construction:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to their plain and ordinary meaning.

41.    Authority to Sign:  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

42.    Integrated Consent Decree:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.  In the event the Regional Water Board or another governmental agency issues a final administrative order or secures any final judicial relief that either effectively prohibits Simpson from taking any action required by this Consent Decree or that effectively requires Simpson to take actions which conflict or interfere with Simpson's implementation of any action required by this Consent Decree, such government-ordered action shall supersede any action required hereunder.  Simpson shall continue to be obligated to implement any action required by this Consent Decree that merely supplements or is otherwise not contradictory to Simpson's compliance with such government-ordered action or prohibition.

43.    Ongoing Litigation with SHN.  This Consent Decree shall neither expand nor contract whatever rights the Citizens may have to conduct discovery related to continuing litigation with SHN.  For purposes of such discovery, Simpson shall not be considered a party to that litigation.

44.    Mailing of Documents to the Citizens:  Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to the Citizens pursuant to this Consent Decree shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, alternatively, may be provided by electronic mail transmission to the e-mail addresses listed below:

Pete Nichols, Director
Humboldt Baykeeper
217 E Street
Eureka, CA 95501
(707) 268-0664
pete@humboldtbaykeeper.org

Patricia Clary
Californians for Alternatives to Toxics
315 P Street
Eureka, CA 95501
707-445-5100
patty@alternatives2toxics.org

James Lamport
Ecological Rights Foundation
867 'B' Redwood Drive
Garberville, CA 95542
jimlamport@humboldt.net

With electronic only copies sent via electronic mail (except for documents not available in electronic format) to:

Christopher Sproul
Environmental Advocates
5135 Anza Street
San Francisco, California 94121
E-mail:  csproul@enviroadvocates.com

Unless requested otherwise by Simpson, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Simpson pursuant to this Consent Decree shall be hand delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, alternatively, may be provided by electronic mail transmission to the e-mail addresses listed below:

David McEntee
Vice President, Operational Services and External Affairs
Simpson Timber Company
917 E. 11th Street
Tacoma, WA 98721-3039
E-mail:  dmcente@simpson.com

and

Betsy Stauffer
General Counsel
Simpson Timber Company
917 E. 11th Street
Tacoma, WA 98721-3039
E-mail:  bstauff@simpson.com

45.     Impossibility of Performance:  No Party shall be considered to be in default in the performance of any of their obligations under this Consent Decree when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control.  "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.  All time periods for performance under this Consent Decree shall be tolled pending the resolution of any circumstance that is beyond the Party's control.

46.     Parties Bound:  This Consent Decree shall be binding upon the Parties and upon their respective successors or assigns.

47.     Assignment:  Neither Party may assign its obligations under this Consent Decree to any third party without the express written consent of the other Party, which consent shall not be unreasonably withheld.

48.     If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void.

49.     Facsimile Signatures:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

50.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for their approval and entry as a final judgment.

Date: FEB. 14 , 2008        _____
                            Pete Nichols,
                            Humboldt Baykeeper

Date: _____, 2008  _____
                            Patricia M. Clary,
                            Californians for Alternatives to Toxics

Date: FEBRUARY 14 , 2008    _____
                            James Lamport,
                            Ecological Rights Foundation

Date: _____, 2008  _____
                            Raymond P. Tennison
                            Simpson Timber Company

APPROVED AND SO ORDERED, this ___ day of _____, 2008.

UNITED STATES DISTRICT JUDGE

By: _____

19

Date: _**FeB. 14**_____, 2008

Pete Nichols,
Humboldt Baykeeper

Date: _____2008

Patricia M. Clary,
Californians for Alternatives to Toxics

Date: _____, 2008

James Lamport,
Ecological Rights Foundation

Date: _____, 2008

Raymond P. Tennison
Simpson Timber Company

APPROVED AND SO ORDERED, this ___ day of _____, 2008.

UNITED STATES DISTRICT JUDGE

By: _____

19

1

2

3  Date: _____, 2008

4                                                    _____
                                                     Pete Nichols,
5                                                    Humboldt Baykeeper

6

7  Date: _____, 2008

8                                                    _____
                                                     Patricia M. Clary,
9                                                    Californians for Alternatives to Toxics

10

11 Date: _____, 2008

12                                                   _____
                                                     James Lamport,
13                                                   Ecological Rights Foundation

14

15 Date: FEBRUARY 19, 2008                           _Raymond P Tennison_____
                                                     Raymond P. Tennison
16                                                   Simpson Timber Company

17

18 APPROVED AND SO ORDERED, this 21st day of  March_____, 2008.

19 UNITED STATES DISTRICT JUDGE

20

21

22 By: _____

23

24

25

26

27

28